## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEBORAH S. JARVIS, individually
and as personal representative of the
Estate of KRISTINE MIHELICH,
deceased.

Plaintiff,

**JURY DEMAND**

-vs-

JESSICA R. COOPER,
individually and in her official capacity
as Oakland County Prosecutor;
PAUL WALTON,
individually and in his official capacity
as Assistant Oakland County Prosecutor;
MICHAEL J. BOUCHARD,
individually and in his official capacity
as Oakland County Sheriff,
MICHAEL G. McCABE,
individually and in his official capacity
as Oakland County Undersheriff
Detective Sgt. DAVID ROBERTSON,
Michigan State Police, individually;
Detective Sgt. DENISE POWELL,
Michigan State Police,
Individually;
Trooper DARBY J. O'DELL,
Michigan State Police,
Individually; and
OAKLAND COUNTY,
a political sub-unit of the State of Michigan.

Defendants.

1

**Paul M. Hughes, Esq.**
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

PAUL M. HUGHES, P 36421
Attorney for Plaintiff
65 Cadillac Square, Suite 2915
Detroit, MI 48226-2880
(313) 964-6465
paul@attorneyhughes.com

## COMPLAINT

NOW COMES the Plaintiff, by and through her attorney, PAUL M. HUGHES, stating as follows:

### JURISDICTION and VENUE

1.       Plaintiff Deborah S. Jarvis ("Mrs. Jarvis" or "Plaintiff") is a resident of the State of Michigan and is the personal representative of the Estate of Kristine Mihelich, deceased.

2.       Defendant Jessica R. Cooper ("Prosecutor Cooper"), is and has been the Oakland County Prosecutor since November of 2008, and upon information and belief is a resident of Oakland County, State of Michigan.

3.       Defendant Paul Walton ("Assistant Prosecutor Walton"), is and has been an assistant Oakland County Prosecutor since October of 1991, and upon information and belief is a resident of Oakland County, State of Michigan.

2

Paul M. Hughes, Esq.
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

4. Defendant Michael J. Bouchard ("Sheriff Bouchard"), is and has been the Oakland County Sheriff since January of 1999 and upon information and belief, is a resident of Oakland County, State of Michigan.

5. Defendant Michael G. McCabe ("UnderSheriff Bouchard"), is and has been the Undersheriff for Oakland County since March of 2003, and upon information and belief is a resident of Oakland County, State of Michigan.

6. Defendant Detective Sgt. David Robertson ("Detective Sgt. Robertson"), is and at all times relevant to this complaint was employed by the Michigan State Police, and upon information and belief is a resident of Oakland County, State of Michigan.

7. Defendant Detective Sgt. Denise Powell ("Detective Sgt. Powell"), is and at all times relevant to this complaint was employed by the Michigan State Police, and upon information and belief is a resident of Oakland County, State of Michigan.

8. Defendant Trooper Darby J. O'Dell ("Trooper O'Dell"), is and at all times relevant to this complaint was employed by the Michigan State Police, and upon information and belief is a resident of Oakland County, State of Michigan.

9. Defendant Oakland County is a political sub-unit of the State of Michigan.

10. All individually named Defendants were acting within the scope of their employment, under their authority as law enforcement officers and under color of law at all times relevant to this complaint.

11. This is a civil rights case arising under the 1st, 4th and 14th Amendments of the

3

Unites States Constitution and 42 USC 1983. Jurisdiction is conferred on this court by 28 USC 1331 (Federal question) and 1343 (Civil Rights).

12.     Venue is proper in the Eastern District of Michigan, Southern Division pursuant to 28 USC 1491 (B), as the individually named defendants, as well as the County of Oakland, are located within this District and the events which give rise to this complaint occurred here.

13.     This complaint also presents pendant state law claims.

FACTUAL BACKGROUND

14.     These are the facts upon which this complaint is based:

a)   during a thirteen-month period beginning in February 1976 and ending in March 1977, four young children were abducted in Oakland County and killed; three of their bodies, including the body of Kristine Mihelich, Mrs. Jarvis' daughter, were recovered in Oakland County, and the fourth child was found in Wayne County; Kristine, along with the three other children collectively became known as the "Oakland County Child Killer" victims. Numerous other abductions and killings occurred before, during and after this time, however they did not receive the lion's share of attention at that time and have not since even though there is an extremely high probability that the deaths of Donna Serra (abducted September 29, 1972, St. Clair Shores, MI), Kim Larrow (abducted June 8, 1981, Canton, MI), Kimberly King (abducted September 16, 1979, Warren, MI), and Jane Allan (abducted August 8, 1976, Royal Oak, MI), among others, are connected to the "Oakland County Child Killer" case.

b)   a task force was formed by the Oakland County Prosecutor and the Michigan State Police along over a dozen local police departments to investigate and hopefully put an end to these murders which shook the region, the state and the nation.

c)   despite a staggering amount of man hours, generous funding, thousands of tips and undoubtedly the hard work of many dedicated, sincere and earnest individuals inside and outside of law enforcement, the killer (or killers) of Mrs. Jarvis' daughter

**Paul M. Hughes, Esq.**
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

4

and of the other victims was never found and brought to justice; the task force disbanded in 1978.

d) as with any case of this nature and magnitude, over the last 35 years many theories have come into being about who the "Oakland County Child Killer" was, and why he (she, or they) were never caught; some more developed and rational than others, along with others bordering on the irrational and sensational, better suited and perhaps designed for, the tabloid media that never tires of conspiracy-type crimes.

e) however there has been one constant over the last 35 years and which continues into the present day and that has been the continued resistance of the Oakland County Prosecutor, the Oakland County Sheriff and the Michigan State Police in providing information to the Plaintiff, other victim's families and the public at large about the results of this massive and publicly financed task force, as well as in providing other information that has resulted from other alleged subsequent investigations which Prosecutor Cooper has publicly stated are going on today under her watch.

f) year after year and decade after decade, it has been the custom, practice and policy of the Oakland County Prosecutor, the Oakland County Sheriff and representatives from the Michigan State Police to stonewall, hinder and obstruct the Plaintiff and other interested parties in their efforts to find out what the initial early investigation uncovered, what has been done in the intervening years to solve this case and what, if anything is being done now by these law enforcement officials to bring this case to an end; the current Oakland County Prosecutor, Defendant Jessica R. Cooper has steadfastly refused to even meet with the victims' families although often requested to do so.

g) rather than cooperating with the Plaintiff and other families by answering their reasonable requests for information about the investigation concerning the deaths of their loved ones, the offices of the Oakland County Prosecutor, the Oakland County Sheriff and the Michigan State Police have done everything in their power to stop the flow of information or have deliberately provided misinformation, including making false statements during press conferences concerning the nature, manner and scope of the current investigation; likewise these same offices have used tactics of witness

Paul M. Hughes, Esq.
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

5

Paul M. Hughes, Esq.
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

intimidation toward   the family of the Plaintiff and others in efforts to make them cease their quest for information. Some examples are:

(i)   one of the victims' families that had repeatedly tried to find out information on one person who was thought to be a suspect by the Oakland County Prosecutor and the Michigan State Police as far back as 1978, was forced to file a lawsuit against the Michigan State Police to gain access to this information; records were subsequently produced in 2010 pursuant to a court order; however Prosecutor Cooper refuses to discuss the matter with the victims' families and continues her silence;

(ii)   in October of 2010 a meeting was arranged at the office former Detroit Chief of Police Ike McKinnon; in attendance were a representative from the press, Defendants Undersheriff McCabe and Assistant Prosecutor Walton and a representative of the Plaintiff who was investigating this case on her behalf who was in telephone communication with all parties; at that time an offer to share crucial information was made by Plaintiff's representative to Defendants Undersheriff McCabe and Assistant Prosecutor Walton on the condition that they provide one insignificant piece of information in this 30-year plus investigation; these Defendants indicated that they were in possession of this information and would share this information with Plaintiff's representative once they were able to obtain the approval of Prosecutor Cooper to do so; Defendant Prosecutor Cooper subsequently refused to supply this information to the Plaintiff;

(iii) in 2011 numerous requests were made for this small piece of information as referenced above by the Plaintiff from Defendants Detective Sgt. Robertson, Detective Sgt. Powell and Trooper Darby of the Michigan State Police, either through direct meetings, telephone calls or emails and each time her request for what only can be considered collateral information was refused by these defendants;

(iv)   additionally in 2011 in what can only be described as an attempt to intimidate the Plaintiff and her family as witnesses, the some or all of the individual Defendants and specifically Trooper O'Dell demanded that they provide DNA samples, even though there was no valid forensic reason for demanding said samples, unless for example, Prosecutor Cooper and the other defendants were taking the position that the sons and daughter of the Plaintiff,

6

for example, (who were only 3, 6 and 8 years-old at the time of Kristine's death), could have been the "Oakland County Child Killer"; Trooper Darby went to far as to tell one of Plaintiff's sons that he could be compelled by Court order to provide a sample if he refused.

h) **On July 6, 2011 the Plaintiff forwarded an email** (see Exhibit A.), she had received from her investigator, aka "Bob" (who wishes to and will remain an anonymous source ), to Defendant Detective Sgt. Robertson of the Michigan State Police advising him that because of the Defendants continued refusal to provide one small collateral piece of information to either Mrs. Jarvis or himself, that a report would be sent to the FBI forthwith detailing either (a) the gross mismanagement of the Defendants in the handling of the "Oakland County Child Killer" investigation, or (b) that the Defendants were actively and deliberately involved in a cover up as evidence highly suggested that at least one of the perpetrators of this heinous crimes had been or was still involved in law enforcement; **on July 13, 2011, less than one week after this email was sent to the Defendant Detective Sgt. Robertson, Defendant Prosecutor Cooper convened the first grand jury in 35 years to ever to consider and allegedly investigate the "Oakland County Child Killer" case** (see Exhibit B.), hoping to cloak herself and the other Defendants behind the wall of secrecy provided by the grand jury and defeat any attempts by federal authorities to obtain information; two days later, at the request of Defendant Prosecutor Cooper, the Wayne County Prosecutor also convened a grand jury, in an attempt to lock down information from yet another agency.

COUNT I
VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
(Right of Access to the Courts)

Plaintiff realleges all prior paragraphs and further alleges as follows:

15.    The individually named Defendants and their predecessors , acting individually, or in concert with each other intentionally denied the Plaintiff and other victims' families of the "Oakland County Child Killer" specific information and

Paul M. Hughes, Esq.
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

7

evidence concerning suspects at one time believed to be involved in the murder of their loved ones.

16.     By not releasing information until 30 years after her daughter's death concerning at least one viable suspect, the actions of all individually named Defendants and their predecessors foreclosed the Plaintiff of her right of access to the courts by denying her the right to bring a wrongful death action concerning the death of her daughter Kristine Mihelich, or rendered ineffective any other state court remedy she previously may have had with respect to bringing such an action against this suspect or suspects yet unknown to her as a result of the delay in the release of information

17.     Whether or not the suspect known to the Defendants and their predecessors 30 years ago, committed the murder of her daughter is not relevant to her cause of action in this court, that fact that she was intentionally denied access to this information directed and proximately caused her injury because now the statute of limitations for bringing a wrongful death lawsuit has long past.

18.     As a direct and proximate result of the blatant and outrageous conduct of the Defendants, the Plaintiff has suffered damages not only compensatory but punitive damages are appropriate to be awarded, all under 42 U.S.C. § 1983.

## COUNT II
## CIVIL CONSPIRACY TO VIOLATE THE PLAINTIFF'S

8

Paul M. Hughes, Esq.
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

## CONSTITUTIONAL RIGHTS AT COMMON LAW
## AND UNDER 42 USC §1985

Plaintiff realleges all prior paragraphs and further alleges as follows:

19. The individually named Defendants and their predecessors acted illegally, maliciously and wrongfully over a period of time in concert with each other in such a fashion and as outlined in this complaint to intentionally obstruct the Plaintiff in exercising her rights under the Constitution of the United States and to deny the Plaintiff her day in court as more fully described in Count I.

## COUNT III
## 42 USC §1983 DEPRIVATION

Plaintiff incorporates all of the paragraphs above and further states as follows:

20. The individually named Defendants acted under color of the statutes, ordinances, regulations and/or customs of the County of Oakland at the time they subjected the Plaintiff to deprivation of the rights, privileges and immunities secured and afforded to her the Constitution and laws of the United State.

21. The Civil Rights Act, 42 USC §1983, provides for civil liability for the deprivation of any right, privilege or immunity secured by the Constitution and laws of the United State, while committed under color of law.

22.. Defendants are liable to Plaintiff pursuant to 42 USC §1983, because their acts and/or omissions, and/or their failure to intervene to prevent the acts as set forth in the previous paragraphs, were committed under the color of law and

Paul M. Hughes, Esq.
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

9

pursuant to the customs, policies and/or practices of County of Oakland, all of which subjected the Plaintiff to deprivation of the rights, privileges and immunities secured and afforded to her by the United State Constitution.

23. The customs, policies and practices of Oakland County as directed, enforced and conducted by Defendants Prosecutor Cooper and Sheriff Bouchard and some or all of their predecessors constitute the moving force and proximate cause of the loss and injury that Mrs. Jarvis has suffered for over 35 years and which continues to the present day as has been described herein.

24. Prosecutor Cooper and Sheriff Bouchard have been fully aware of and have acquiesced in the continued implementation of the customs, policies and practices of Oakland County some of which may have pre-existing their tenure and which have been the moving force and proximate cause of the loss and injury that Mrs. Jarvis has suffered for over 35 years and which continues to the present day as has been described herein.

COUNT IV
42 USC §1983 DEPRIVATION
COUNTY/SUPERVISORY LIABILITY

Plaintiff incorporates all of the paragraphs above and further states as follows:

25. At all times relevant herein, Defendant Oakland County acting through its supervisory officers and officials, such as Prosecutor Cooper and Sheriff Bouchard, and by its own customs, policies or practices, failed to establish,

10

**Paul M. Hughes, Esq.**
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

**Paul M. Hughes, Esq.**
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

maintain or enforce proper police procedures, hiring standards and practices, training practices, as well as disciplinary procedures, necessary to prevent the unconstitutional conduct herein described directly and therefore constitutes the moving and proximate force of injury to the Plaintiff by depriving her of her right to seek access to the courts, obtain information and be free from witness intimidation towards her and her family members secured and afforded to her under the 1st and 14th and other amendments to the Constitution of the United States.

26.     As a direct and proximate result of the policies, practices and customs of the Defendant Oakland County, the Plaintiff suffered damages as have been previously described in addition to humiliation, degradation, and mental and emotional injuries, all past, present and future.

<u>COUNT V</u>
<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
<u>(State Law Claim)</u>

Plaintiff incorporates all of the paragraphs above and further states as follows:

27.   The individually named Defendants' conduct as has been described in this complaint was intentional.

28.   The individually named Defendants' conduct was extreme, outrageous, and of such a nature that it cannot be tolerated by a civilized society.

29.   The individually named Defendants' conduct was done for an ulterior

11

motive or purpose.

30.   Their conduct is a direct and proximate cause of severe and serious emotional distress to the Plaintiff.

COUNT VI
REQUEST FOR INJUNCTIVE OR EQUITABLE RELIEF

31.   Plaintiff requests that this Court use its inherent power to provide equitable relief to her by requiring the Oakland County Prosecutor, the Oakland County Sheriff and the Michigan State Police to turn over documents* in any way connected to the "Oakland County Child Killer" case to the United States Department of Justice for further investigation and review, as well as to compel the Oakland County Prosecutor, the Oakland County Sheriff and the Michigan State Police to waive the secrecy provisions of MCL 767.4a.

PRAYER FOR RELIEF

For all of the reasons contained herein, your Plaintiff seeks the following relief:

a).   Order the Defendants to turn over all documents in any way connected with the case known as the "Oakland County Child Killer" Case" to the Department of Justice in Washington, D.C.

b) Order the Oakland County Prosecutor, the Oakland County Sheriff and the Michigan State Police to waive the secrecy provisions of MCL 767.4a.

c)   Request that the Department of Justice in Washington, D.C. begin an

12

immediate investigation of the "Oakland County Child Killer" Case and to the manner and way that it has been conducted by all Defendants named above and their predecessors.

d) Award the Plaintiff Judgment in the amount of Forty-Million Dollars as compensatory damages and Sixty-Million Dollars as punitive damages, for a total Judgment in her favor and against the Defendants of One-Hundred Million Dollars, together with interest, costs and actual attorney's fees pursuant to 42 USC 1988.

Respectfully submitted,

LAW OFFICES OF PAUL M. HUGHES

s/ Paul M. Hughes

Paul M. Hughes, P 36421
Attorney for Plaintiff
65 Cadillac Square, Suite 2915
Detroit, MI 48226-2880
(313) 964-6465
paul@attorneyhughes.com

Dated: April 23, 2012

*

The term "document" shall refer to all writings and materials of any kind, including, but not limited to, orders, instructions, reports, directives, summaries, interviews, complaints, statements (whether signed or unsigned), transcripts, regulations, memoranda, notes, correspondence, diagrams, maps, drafts, computer files, computer disks or any other electronic data. "Document" also refers to records including, but not limited to, photographs, microfilm, videotape, audiotape, motion pictures, computer media and any other electronic or mechanical recording. "Document" includes originals and copies.

13

# JURY DEMAND

Plaintiff requests a trial by jury on all matters before the Court to the extent allowed by law.

Respectfully submitted,

LAW OFFICES OF PAUL M. HUGHES

s/ Paul M. Hughes

_____

Paul M. Hughes, P 36421
Attorney for Plaintiff
65 Cadillac Square, Suite 2915
Detroit, MI 48226-2880
(313) 964-6465
paul@attorneyhughes.com

Dated: April 23, 2012

**Paul M. Hughes, Esq.**
65 Cadillac Square, Suite 2915
Detroit, Michigan 48226
(313) 964-6465
Fax: (313) 447-2889

14

From: Debbie Jarvis ███████████████
Date: Wed, Jul 6, 2011 at 1:19 PM
Subject: Spelling corrections
To: Dave Robertson ██████████████


Dave, Bob asked me to forward this to you. Detective Sergeant Robertson, First,
based on the activities, conduct, false, witnessed, and documented
representations made by McCabe and Walton at the direction of Cooper
(Representatives of Oakland County Law
Enforcement) prior, during, and subsequent to a telephone conference meeting that
took place at Ike McKinnon"s office at approximately 9:15 am on October 14th,,
2010. Also present at this meeting, at my insistence for the purpose of
establishing and independent record as to what transpired during this meeting,
was Cory Williams of the Associated Press. As you are also aware Mr. Williams
initially contacted you regarding this same subject matter as it relates to
questions regarding the OCCK case. You spoke with Mr. Williams on one occasion
and after that initial conversation you did not respond to at least three
subsequent efforts by Mr. Williams to contact you where he left you voice mail
messages asking you to contact him. The meeting at McKinnon's office lasted for
less than an hour in the middle of a six week period during September and October
of 2010 when contact was initiated and ended with representatives of Oakland
County. I also have concerns as it relates to the representations and conduct by
these officials during and subsequent to this meeting . As a result of what
transpired there are two main issues that concern me.

1. Based on information provided to Oakland County representatives that resulted
in their attendance of this meeting I have a good faith belief that they attended
because of information they were provided that they were not aware of, or that
they are protecting some one in law enforcement that is linked to this case.

2. Although they were advised prior to the meeting that I took issue with your
initial response to Cory Williams from the Associated Press.
I would ask that you ask your self this. If their intent was to develop a
relationship and some degree of trust between us by finding mutual ground by
implying that they were not satisfied with your handling of the investigation.
Then why did they just not say they were not satisfied with your efforts, and
they would handle are interaction differently?

Instead they went to the extreme of first stating prior to the meeting through
McKinnon and Williams that they were taking the case back from you and the state
police. Then again at the out set of the meeting stated that they have officially
taken the case back from the state police the previous week, are now the lead
investigative agency on the case, and further stated that they questioned your
handling of the case?

I concluded their were three possibilities based on the information I had
developed and after learning that their representations regarding the state
police was a flat out lie. They had a concern regarding information developed
that was provided to them prior to the meeting that included specific police
departments that at least one person of interest may have been employed by, that
there is a member of law enforcement or their family that they are aware of who

PLAINTIFF'S
EXHIBIT
A.

is involved in this case and they may be covering for, and/or there were mistakes made in the investigation that they do not want to be made public, and based on the preliminary information they were provided they were aware that I had concerns related to these possibilities.

In essence their statements would leave me to believe you and the state police had no further involvement in the case, that it would be a waste of time for me to have any contact with you, and any future information or contact should be directed to them. Why would such a representations be made, and for what purpose beyond those that I describe?

I am aware that you have spoken with ██████████ That would lead me to believe you are aware that a complete report of my research is being forwarded to the FBI in Washington DC for review. That a request shall be made for them to investigate this matter further based on the new information they are being provided with.

As it relates to certain representations made by yourself and ██████ ██████ to Ms. Jarvis. Be advised I have made it clear to each and every person I have had contact with regarding this case that I will not be seeking any monetary or personal recognition for my efforts. That I will not come forward whether this case is resolved or not due to any research I have conducted on a group of cases I now believe, based on the information developed, that may have resulted in the homicide deaths of at least nine minor children. I have determent that it is more likely than not that this information could lead to the arrest and conviction of the individuals responsible for these crimes.

However, I have also stated that there is no absolute way of knowing the final out come of these cases because there are several key pieces of evidence that only law enforcement shall be able to obtain through the execution of subpoenas and searches that shall require the issuance of warrants. But through the research that has been conducted and developed that there is a good faith belief that such subpoenas and warrants shall be granted by any court within these jurisdictions.

In addition every individual that I have had contact with has been advised that based on the past practice and conduct by law enforcement as it relates to suspect names being released and then subsequently being cleared. That until such time that I had developed a good faith bases that any persons of interest I believe were involved in these crimes. That I would not provide there names to any law enforcement agency, and that under no circumstances would I provide said names to the media or any one else out side of law enforcement.

The only member of law enforcement that I have had contact with related to these cases that I have any degree of trust with to the extent possible, is retired Detective Sergeant ██████. Although Mr. ██████ is unaware of this, it was through is assistance , and through are discussions that allowed for information not realized or developed by law enforcement to be discovered. It required the information that we each had separately for this to lead beyond just a theory.

I will only say that if yourself and representatives of Oakland County came across as being more concerned with solving this case as it appears that they are

about the identity of a person developing the information. That by now these cases would have been investigated and persons of interest would have been either been charged or cleared as suspects.

With that said there is no reason for you to continue to call Ms. Jarvis and inform her that I have not called you as of yet. You have been clearly advised by Ms. Jarvis that there would be no reason for me to contact you until after I were to receive the answers to the questions Ms. Jarvis submitted to you on my behalf.

For the record, with out Ms. Jarvis and ████████being as cooperative and helpful during this research it would have been impossible to have developed the information in these cases necessary to submit such findings for review by any law enforcement agency. The information could not have been developed or brought to the standard I would require for any persons of interest to be named with out their assistance. Someday down the road after this matter is concluded, and should it result in nine unsolved cases being resolved. You might take it upon yourself to contact McCabe and Walton and let them know the next time one of them mouths ██████name, and the other rolls his eyes to the ceiling, they might put a mirror in front of themselves when they do it.

As to your questions directed to Ms. Jarvis and making unfounded representations as to what my motivations are. Be advised Ms. Jarvis is not aware of the reasons for any inquires I have made of her, nor what the information she has provided is assisting in the development of. This would also apply to any discussions I have had with Mr. █████. Unlike most law enforcement representatives I have to deal with during this research Jarvis and ██████ only concern has been in resolving this case, not in how this is resolved.

When the meeting with the Oakland County representatives took place in October there were approximately 34 unanswered questions. When you were contacted by Ms. Jarvis there were approximately 8 questions remaining. If you wish to expedite this matter then provide Ms. Jarvis with the answers to the questions you have been provided. If not, in the end the answers will be obtained to all but two of those questions. But it will be a matter of record should this resolve in nine unsolved homicides being resolved as to why it took ten months longer for this to occur.

As relates to these cases I should be the least of your concerns. Everyone associated with these cases should be concerned with what may bring them to their conclusion over anything else. It is no secret law enforcement has nothing further to pursue as it relates to these cases.

If you were serious and your representation to Ms. Jarvis that you do not have the budget, resources, or available personal to pursue the answers to the questions submitted that would take at most one person and a couple of hours of time. Then that would lead one to believe that you do not have the budget, resources, or personal to pursue the investigation of information connected to nine cases that took over 5 ½ years to develop, and would require at the very least six investigators and between 400-600 hours of investigative time. This seems to indicate that it would be a waste of both our time to discuss this

matter further since by your own representations that you do not have the available resources to follow up on any information provided to you that is related to these cases.

The objective of everyone evolved with these cases should be to resolve them by any and all means possible with any assistance's being offered. I cannot speak for any one else involved in these cases, but my only motivation, objective, or interest in resolving these cases is so that at least nine families will find answers to the two questions they deserve; WHO AND WHY.

Hopefully you will reconsider the position you have taken as it relates to the requested information. But either way I will not be deterred and will find away around any road blocks that are put up in getting to the truth. Unless a good faith effort is made on your behalf by responding with answers to the questions as has been requested through Ms. Jarvis. Then we would have nothing further to discuss concerning this matter for the reasons as stated here in.

(redactions made by counsel for the Plaintiff)

**Grand Jury seated as new task force takes over Oakland County Child Killer case**

07/13/2011

**(WXYZ) - Action News has learned that there is a major new development in the Oakland County Child Killer case.**

A grand jury has been seated in Oakland County on the decades-old case.

The grand jury will listen to evidence presented by investigators, and hear testimony from witnesses.

Four children were abducted and murdered in Oakland County between 1976 and 1977.

Under the law, grand jury proceedings are supposed to be secret.

Action News has also learned a new major task force has been formed to pursue leads in the case.

No one from the Child Killer Task Force has returned phone calls to comment on the grand jury.

Link to story:  http://www.wxyz.com/dpp/news/region/oakland_county/grand-jury-seated-as-new-task-force-takes-over-oakland-county-child-killer-case#ixzz1spxLYB2P

PLAINTIFF'S
EXHIBIT
*B.*