UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH S. JARVIS, individually and as
personal representative of the Estate of
KRISTINE MIHELICH, deceased

        Plaintiff,

v.                                         Case No. 12-CV-11804
                                         Honorable Denise Page Hood

JESSICA R. COOPER, individually and in her
official capacity as Oakland County Prosecutor;
PAUL WALTON, individually and in his official
capacity as Assistant Oakland County Prosecutor;
MICHAEL J. BOUCHARD, individually and in
his official capacity as Oakland County Sheriff,
MICHAEL G. McCABE, individually and in his
official capacity as Oakland County Undersheriff;
Detective Sgt. DAVID ROBERTSON, Michigan
State Police, individually; Detective Sgt. DENISE
POWELL, Michigan State Police, individually;
Trooper DARBY J. O'DELL, Michigan State
Police, individually; and OAKLAND COUNTY,
a political sub-unit of the State of Michigan,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, DENYING PLAINTIFF'S MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF

       This matter is related to the tragic and unsolved Oakland County Child Killer case. Between February 1976 and March 1977, four children were abducted and murdered in Oakland and Wayne County. The Plaintiff Deborah S. Jarvis's daughter was counted among the victims. She filed this present matter on April 23, 2012 alleging several constitutional challenges involving the investigation of her daughter's case. Now before the Court is Defendants' Motions to Dismiss and Plaintiff's Motion to Dismiss. For the reasons stated in more detail below, Defendants' Motions to

Dismiss are GRANTED and Plaintiff's Motion to Dismiss is DENIED.

**I.**

Plaintiff Deborah S. Jarvis is the mother of and personal representative of the Estate of Kristine Mihelich, the deceased. Jarvis filed this action against Jessica Cooper, the Oakland County Prosecutor; Paul Walton, an Assistant Oakland County Prosecutor; Michael J. Bouchard, the Oakland County Sheriff; Michael G. McCabe, the Undersheriff for Oakland County; and Oakland County (Collectively the "Oakland County Defendants"). Also named in the complaint is David Robertson, a Detective Sargent with the Michigan State Police; Denise Powell, a Detective Sargent with the Michigan State Police; and Darby J. O'Dell, a Trooper with the Michigan State Police (Collectively the "Michigan State Defendants").

Jarvis states the following bases for relief: (1) Violation of the right to access the courts pursuant to the First and Fourteenth Amendments; (2) Civil conspiracy to violate the Jarvis's constitutional rights pursuant to 42 U.S.C. § 1985; (3) Deprivation of a right, privilege or immunity secured by the Constitution or laws of the United States pursuant to 42 U.S.C. § 1983; (4) Supervisory liability pursuant to 42 U.S.C. § 1983; and (5) Intentional infliction of emotional distress. She asks that the Court order the release of all documents related to the Oakland County Child Killer case to the Department of Justice; order the Oakland County Prosecutor, the Oakland County Sheriff, and the Michigan State Police to waive the secrecy provisions of MICH. COMP. LAWS § 767.4a; enter a request that the Department of Justice begin an immediate investigation of the Oakland County Child Killer case and the manner of the investigation handled by the Defendants; and award Jarvis $40 million in compensatory damages and $60 million in punitive damages and costs and fees pursuant to 42 U.S.C. § 1988.

During the period of February 1976 until March 1977, four children were abducted from Oakland County, Michigan. The bodies of three of the children, including Jarvis's daughter, were recovered in Oakland County. The fourth body was recovered in Wayne County. These abductions became known collectively as the Oakland County Child Killer case. During that time, the Michigan State Police and the Oakland County Prosecutor formed a task force with other local police departments to investigate the abductions. Unfortunately, the task force was unable to identify the Oakland County Child Killer. In 1978, the task force disbanded.

Jarvis alleges that it is the custom, policy, and practice of the Oakland County Prosecutor, the Oakland County Sheriff and the Michigan State Police to "stonewall, hinder and obstruct [Jarvis] and other interested parties in their efforts to find out what the initial early investigation uncovered, what has been done in the intervening years . . . and what . . . is being done now by these law enforcement officials to bring this case to an end". [Docket No. 1, Pg ID 5] Jarvis further alleges that the Defendants have deliberately attempted to stop Jarvis and others from inquiring into the Oakland County Child Killer case by providing false information and intimidating witnesses.

In October 2010, Jarvis's representative, a member of the press, and Defendants McCabe and Walton met at the office of the former Detroit Chief of Police. There, Jarvis offered to provide the police with "crucial information" in exchange for "one insignificant piece of information."[1] [Docket No. 1, Pg ID 6] McCabe and Walton indicated they would provide the information once they received approval from Prosecutor Cooper. She, however, refused to provide the requested information. In 2011, Jarvis made several requests for the same information to Defendants

---

[1] In 2011, Jarvis made several requests for the same information to Defendants Robertson, Powell and O'Dell; her requests were refused. Jarvis does not explain the nature of the information that was the subject of the exchange.

3

Robertson, Powell and O'Dell; her requests were refused.

Jarvis further alleges that, in 2011, "some or all of the individual Defendants and specifically Trooper O'Dell" demanded that Jarvis and her family provide DNA samples. [Docket No. 1, Pg ID 6–7] O'Dell told one of Jarvis's sons that he may be compelled by Court order to provide a sample if he refused.

In July 6, 2011, Jarvis forwarded an email to Defendant Robertson from an anonymous investigator named "Bob." In the email, Bob indicated that due to the Michigan State Police's refusal to provide the "one small collateral piece of information," he would send a report to the FBI detailing either the mismanagement of the Oakland County Child Killer case or the Defendants involvement in a cover up. Bob explained that evidence "highly suggested" that one of the perpetrators of the Oakland County Child Killer case was or is still involved in law enforcement. [Docket No. 1, Pg ID 7] On July 13, 2011, Prosecutor Cooper convened the first grand jury in approximately 35 years to investigate the case. At the request of Prosecutor Cooper, the Wayne County Prosecutor convened a grand jury two days later.

## II.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff.[2] *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th

---

[2] Defendants attach several documents to its motion to dismiss, including news articles and an affidavit. In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and central to the claims contained therein." *Bassett v. Nat'l Collegiate Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may consider items that "verify the complaint" and do "not rebut, challenge, or contradict anything in the plaintiffs' complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993); *see also Armengau v. Cline*, 7 Fed. Appx. 336, *5 (6th Cir. 2001) ("extrinsic materials [that] merely 'fill in the contours and details' of a complaint, . . . add

Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

### A. Absolute Immunity

The Oakland County Defendants contend that Cooper and Walton, as prosecutors, have absolute immunity from this action. A prosecutor enjoys absolute immunity from civil liability when acting within the scope of his or her duties as prosecutor. *Imbler v. Pachtman*, 424 U.S. 409, 420, 430 (1976); *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). The Supreme Court endorses a "functional" approach, which requires the Court to look at the nature of the function performed and not the status of the defendant. *Cooper v. Parish*, 203 F.3d 937, 946 (6th Cir. 2000). "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Ireland*, 113 F.3d

---

nothing new and may be considered without converting the motion to one for summary judgment") (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)). The Court may also take note of matters to which it could take judicial notice. *Armengau*, 7 Fed. Appx. at *5.

     However, the Court cannot consider items that would refute the factual allegations in Plaintiff's Complaint. *See Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 2012 WL 678166 (6th Cir. Mar. 2, 2012) (reversing trial court grant of motion to dismiss when trial court considered settlement agreement that directly conflicted with allegations made in the complaint). Accordingly, the Court will not consider the news articles or affidavit to the extent that they contradict the allegations in Jarvis's Complaint.

at 1443 (quoting *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993)). The official seeking immunity must demonstrate whether it applies. *Burns v. Reed*, 500 U.S. 478, 486 (1991). Qualified and not absolute immunity applies to actions by prosecutors that are investigative or administrative in nature. *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011). The acts that are considered outside the scope of absolute immunity include giving legal advice to police at a pretrial investigation, conspiring to fabricate evidence, or making false press statements. *Id.*

Jarvis contends that the question of whether Cooper and Walton are immune from suit is a question for the jury. At this stage, the Court is required to accept all the allegations as true and determine whether Jarvis has stated a plausible claim for relief. *See Twombly,* 550 U.S. at 570. She alleges that the Oakland County Prosecutor withheld information on the Oakland County Child Killer case and made false press statements. As stated above, absolute immunity does not attach to providing false statements to the press. *See Adams*, 656 F.3d at 402. However, there is no factual support for Jarvis' allegation in the Complaint; Jarvis' allegations are conclusory.

Jarvis also alleges that she was denied access to important information on the Oakland County Child Killer investigation. She does not specifically mention Walton at all, but notes that Cooper denied her requests for an "insignificant piece of information." If Cooper and Walton were in the process of putting together a case to present to the grand jury, this activity would not fall within the ambit of actions associated with the judicial phase of a criminal action. Rather, it appears more investigative in nature. Cooper did in fact call for a grand jury in July 2011, but this was after Jarvis requested the information. It does not appear that the act of providing false press statements or refusing to provide investigative information would fall within the protection of absolute immunity. The Court finds that Cooper and Walton are not entitled to absolute immunity.

**B.     Qualified Immunity**

The Oakland County Defendants and Michigan State Defendants assert that they are entitled to qualified immunity.[3] Qualified immunity is generally a threshold defense whose applicability is to be determined by the trial judge. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). The Supreme Court has set forth a two-part test to determine whether qualified immunity should attach: (1) whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). The district court is no longer required to initially inquire into whether there was a constitutional violation; the trial court is free to exercise its discretion to determine which prong should be analyzed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Supreme Court has explained that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 121. An official who makes a reasonable mistake that his or her conduct is lawful is still be entitled to qualified immunity. *Id.*; *see also, Pearson*, 555 U.S. at 224 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). The Court must determine whether the plaintiff has provided sufficient evidence to demonstrate that Defendants' conduct was objectively unreasonable in light of Plaintiff's clearly established rights. *See Williams v. Mehra*, 186 F. 3d 685, 691 (6th Cir. 1999).

As the Court has already determined, there has not been a violation of the right to access the

---

[3] The Oakland County Defendants concede that Defendant Oakland County is not entitled to qualified immunity.

courts. Jarvis has not identified another right that Defendants violated. Even if Jarvis was able to identify a constitutional violation, Defendants act of refusing to provide information that was part of an ongoing investigation was not objectively unreasonable. *See* MICH. COMP. LAWS § 767.4a; MICH. COMP. LAWS § 767.19f. Given that it is illegal to provide or use information that is connected to a grand jury, it was reasonable for Defendants to deny Jarvis the information. Jarvis has not identified any case law supporting her proposition that she is entitled to the information. Therefore, the Court finds that the Oakland County Defendants, with the exception of Defendant Oakland County, and the Michigan State Defendants are entitled to qualified immunity.

Even if the Oakland County Defendants and the Michigan State Defendants were not entitled to immunity, the Complaint fails to state a claim for relief.

    **C.**     **Right to Access the Courts**

Jarvis argues that she was denied her right to access the courts in violation of the First and Fourteenth Amendments. *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) ("It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution") (citing *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986)); *Flagg v. City of Detroit*, 447 F.Supp.2d 824, 829 (E.D. Mich. 2006) (Rosen, J.). There are two types of right to access cases: forward looking and backward looking. *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). A forward looking case involves "systematic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. A backward looking case, which is at issue here, involves an action that precludes certain relief, i.e. a police cover-up of information. *Id.* at 414. The right to access is violated when a defendant's actions cover up evidence and "renders a plaintiff's state court remedy ineffective." *Swekel*, 119

F.3d at 1262.

The Court must determine whether the aggrieved activity occurred pre- or post-filing of a complaint. *Id.* at 1263. If it occurs pre-filing, as is alleged here, the plaintiff must show that she was denied an effective and meaningful access to the courts. *Id.* She must demonstrate to the Court that "the defendants' actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had." *Id.* at 1263–64.

Jarvis argues that she was precluded from pursuing a wrongful death or other state action because the Defendants and their predecessors intentionally denied her an "insignificant piece of information" concerning suspects in the Oakland County Child Killer case. She does not describe the nature of the requested information. Nor does she explain how Defendants denying her this information frustrated her access to the court. Rather, her allegations of harm are vague and conclusory. The Court is left to guess the nature of the harm and how it kept her from filing a wrongful death or other state court action. *See Harbury*, 536 U.S. at 415 ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official action frustrating the litigation").

Jarvis does not address the lack of factual support for her allegations. She contends that she could not bring a state wrongful death action because she did not know the identity of those responsible for her daughter's death.[3] A successful pre-filing claim requires the plaintiff to first show that she attempted to access the courts; otherwise the Court is unable to determine whether a plaintiff's access was truly effective and meaningful. *Swekel*, 119 F.3d at 1264. Jarvis does not allege that she attempted to first seek relief in state court. Defendants argue that she could have filed

---

[3] Jarvis concedes that the statute of limitations for a wrongful death action has lapsed and an action is barred by the applicable statute of limitations.

9

a "John Doe" action and discovered the identity of the defendant through the discovery process. Jarvis does not allege that she made this attempt or any other attempt to seek redress for alleged wrongs. Accepting all the facts in the Complaint as true, the Court could not determine whether Jarvis was denied effective and meaningful access to the courts. *See Swekel*, 199 F.3d at 1264 ("Before filing an 'access to courts' claim, a plaintiff must make some attempt to gain access to the courts"); *Flagg*, 447 F.Supp.2d at 834 ("Plaintiff does not allege that he is foreclosed from bringing a state-court wrongful death action against 'John Doe' defendants, which in turn would provide a vehicle for discovery concerning any alleged concealment of evidence or any promising leads that were abandoned in the local and state court investigations").

Jarvis contends that any initial attempt to seek relief in state court would have been futile. She claims that the actions of Defendants and their predecessors denied her access to information, which would have allowed her to seek remedy in state court and that could have prevented her daughter's death. The Sixth Circuit has noted in dicta that there may be circumstances when it would be futile for the plaintiff to first attempt to file her action in state court. *Swekel*, 199 F.3d at 1264 n.2.

However, Jarvis provides absolutely no reason why she did not file her claim in state court. She also fails to provide any support for why the Court should hold Defendants liable for the death of her daughter when they, with the exception of Oakland County, were not personally involved with the case until year 2000 or later. While the Court sympathizes with the grief and loss that Jarvis feels as a result of the death of her daughter, the Court cannot hold Defendants responsible for actions in which they were not personally involved.[4] *See Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir.

---

[4] Jarvis argues that the Court should not dismiss her action because discovery is ongoing. However, the deficiencies in Jarvis' complaint are not factual in nature, but legal.

1991) (noting that, in a § 1983 action, liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants"). The Court dismisses Court I of the complaint for failure to state a claim for violation of the right to access the court.[5]

### D. Section 1985 Conspiracy Claim

Jarvis alleges the Offices of the Oakland County Prosecutor, the Oakland County Sheriff, and the Michigan State Police conspired to deprive her of the right to access the courts and of other unidentified rights under the Constitution in violation of 42 U.S.C. § 1985. She does not identify the subsection that she relies on to make her claim. Section 1985(1) prohibits interference in an

---

[5] Furthermore, it appears that Jarvis' claim is barred by the statute of limitations. In § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). The statute of limitations in Michigan is three years. MICH. COMP. LAWS § 600.5805(10); *see also Chippewa Trading Co. v. Cox,* 365 F.3d 538, 543 (6th Cir. 2004), *Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir. 1986). Federal law is used when determining when the statute of limitations has accrued. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273.

Without providing any legal support, Jarvis argues that her harm is "continuous and ongoing." She claims that the most recent violation occurred in October 2010. The Court understands Jarvis to allege that the harm began in 1976 when information that would have allowed her to file a wrongful death action and that could have *prevented* the death of her daughter was withheld from her. The statute of limitations in Michigan for a wrongful death action is three years. MICH. COMP. LAWS § 600.5805(10); *see also Trentadue v. Gorton,* 479 Mich. 378, 386-387, 738 N.W.2d 664 (2007). Michigan does not apply the discovery rule to wrongful death actions, so the cause of action for wrongful death accrued when Jarvis was harmed and not when Defendants acted. *Id.* Jarvis was harmed when her daughter passed. She then had three years to file a wrongful death action in state court. When the statute of limitations for the wrongful death action lapsed, Jarvis knew or had reason to know that she was injured, i.e. denied effective and meaningful access to the courts. Any § 1983 action based on the denial of access to the courts was long ago foreclosed.

11

officer's duties. The first subpart of § 1985(2) involves a conspiracy to deter a federal witness or party. Neither is applicable to this case.

> The second subpart of § 1985(2) creates a cause of action for conspiracy to:
>
> imped[], hinder[], obstruct[], or defeat[], in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

The plaintiff must allege a conspiracy and class-based discriminatory intent. *Kush v. Rutledge*, 460 U.S. 719, 725-727 (1983). An action under § 1985(3) requires: (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the law; (3) an act in furtherance; and (4) an injury to person or deprivation of a right or privilege of United States citizenship. *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003). Under § 1985(3), the Plaintiff must allege a conspiracy and class-based discriminatory intent. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 367 (6th Cir. 2012). Jarvis' claim for § 1985 conspiracy fails because she does not allege that she is part of a class nor that she was denied equal protection due to her membership in the class.

Jarvis requests leave to amend her complaint to delete the § 1985 conspiracy claim and add a § 1983 conspiracy claim. The Sixth Circuit has articulated the following standard for a conspiracy claim pursuant to § 1983:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). A claim for conspiracy must be plead with

specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987).

Granting leave to file an amendment is within the Court's discretion. *See General Electric Co. v. Sargent & Lundy*, 916 F. 2d 1119, 1130 (6th Cir. 1990); *see also* Fed. R. Civ. P. 15(a)(2). The Court will not grant leave to file an amendment if the amendment would be futile, i.e. would not survive a motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000). Once again, Jarvis does not allege a right of which she was deprived. The Court will not grant Jarvis leave to amend her Complaint because the amendment would be futile.

### E. Section 1983 Deprivation Claim

Jarvis makes a section 1983 deprivation claim. She asserts that she was denied a right guaranteed by the Constitution or the laws of the United States and the Defendants were acting under color of state law. She further alleges that Cooper and Bouchard enforced policies, customs or practices that deprived her of these rights. She then alleges that Cooper and Bouchard were aware of these customs, polices, or practices and acquiesced in there continuation. However, Jarvis does not identify a right, a policy, custom, or practice, or provide any factual support for this claim. This claim is completely deficient and is therefore dismissed.

### F. Supervisory Liability

Jarvis next alleges that Oakland County maintained a policy, practice, or custom in their hiring practices and disciplinary procedures that denied Jarvis access to the courts, ability to obtain investigatory information, and to be free from witness intimidation. To maintain an action under § 1983, a plaintiff must demonstrate that he or she was deprived of a right guaranteed by the Constitution or laws of the United States by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Municipalities may also be held liable under §1983. *Monell*

13

*v. Dep't. of Soc. Serv.*, 436 U.S. 658, 690 (1978). However, a municipality will not be held vicariously liable for the actions of its employees. *Id*. at 691. Municipal liability will only attach if there is an official policy, practice, or custom that causes a constitutional injury. *Id*. at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

A municipality's failure to train employees may subject it to liability under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Demonstrating that a particular officer's training is inadequate or that the training could have been better is, however, insufficient to establish liability. *Canton*, 489 U.S. at 391. A municipality will be held liable only when a "failure to train reflects a 'deliberate' or 'conscious' choice" by the municipality. *Id*. at 389.

The Sixth Circuit has identified "at least two types of situations that would justify a conclusion of deliberate indifference in the failure to train police officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). The first is a "failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Id*. The second is "where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id*. Such deliberate indifference is demonstrated when "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. In short, a plaintiff must prove that (1) the training program was inadequate, (2) the municipality's deliberate indifference caused the inadequacy, and (3) the inadequacy was closely related to or actually caused the plaintiff's injury. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Jarvis has alleged one instance of witness intimidation and withholding information that

appears to have been part of an ongoing investigation. She has not, however, identified a policy, custom, or practice that resulted in the deprivation of some constitutional right. Although Jarvis contends that she was deprived of access to the courts, this right was not violated. Even if it were violated, Jarvis' allegations are devoid of factual support; she provides the Court with nothing more than conclusions. For example, the declaration of the anonymous "Bob" includes only conclusions and arguments. Jarvis simply states that there was an unlawful custom, practice, or policy and leaves the Court to guess what exactly it was. This claim is also dismissed.

### G. Intentional Infliction of Emotional Distress

Jarvis asserts that the individual Defendants engaged in intentionally outrageous conduct that caused her distress. She concedes that the individual Defendants were acting within the scope of their employment [Docket No. 1, ¶ 10]. Michigan has not explicitly recognized as a tort, intentional infliction of emotional distress. *Smith v. Calvary Christian Church*, 462 Mich. 679, 686 n.7, 614 N.W.2d 590 (2000). However, the Michigan Supreme Court has noted that a claim for intentional infliction of emotion distress may be established under the standard described in the Second Restatement: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) plaintiff suffered severe emotional distress. *Robert v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985). "[T]he conduct complained of [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Haverbush v. Powelson*, 217 Mich. App. 228, 234, 551 N.W.2d 206 (1996). As an initial matter, the refusal to provide an insignificant piece of evidence and one alleged incident of witness intimidation do not rise to the level of outrageousness that would exceed all bounds of decency in a civilized society sufficient to support a claim of

15

intentional infliction of emotional distress.[6]

### III.

Jarvis ask that the Court, through injunctive relief, to require Defendants to turn over documents connected to the Oakland County Child Killer case, and request the Department of Justice to assume investigation and to initiate an investigation into Defendants' handling of the state investigation. Although it appears that the relief requested may be more appropriately termed a writ of mandamus, *see* 28 U.S.C. § 1651, Jarvis insists that she seeks an injunction.

A preliminary injunction requires proof of: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury absent the injunction; (3) the harm to others that will occur if the injunction is granted; and (4) whether the injunction would serve the

---

[6] However, even if Jarvis was able to show that Defendants' conduct was outrageous, at least some of Defendants are entitled to immunity against the claim of intentional infliction of emotional distress. Cooper and Bouchard, as the highest elected officials in their area of the executive, are entitled to absolute immunity. *See* MICH. COMP. LAWS § 691.1407(5) ("A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority"); *see also Rose v. Saginaw County*, 353 F.Supp.2d 900, 924-25 (E.D. Mich. 2005).

Lower level government employees are entitled to qualified immunity for intentional torts when: (1) the complained of acts were undertaken during the course of employment; (2) the acts were taken in good faith; and (3) the acts were discretionary and not ministerial. *Odom v. Wayne County*, 482 Mich. 459, 461, 760 N.W.2d 217 (2008). Conduct lacking good faith has "malicious intent, capricious action, or corrupt conduct," or "willful and corrupt misconduct." *Id.* at 474. The proponent of immunity must show that he acted without malice. *Id.* at 475. A ministerial act is the result of following an order with little or no choice. *Id.* at 476. Discretionary acts involve "personal deliberation, decision, and judgment." *Id.*

As to Walton and McCabe, Jarvis only alleges that they attended a meeting. They agreed to share information with Jarvis if given approval from Cooper; she denied the approval. It appears that the act of refusing to provide information would constitute a ministerial act because Walton and McCabe needed to get approval before they could give the requested information to Jarvis. The Michigan State Defendants acknowledge that they were engaged in ministerial acts. Given that the act complained involved ministerial acts and not discretionary acts, Walton, McCabe and the Michigan State Defendants would not be entitled to qualified immunity on the intentional infliction of emotional distress claim.

public interest. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); *Lucero v. Detroit Pub. Sch.*, 160 F. Supp.2d 767, 778 (E.D. Mich. 2001). The purpose of an injunction is to maintain the status quo pending a resolution of the matter on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The Court must make specific findings on each factor unless fewer factors would be dispositive. *Bonnell*, 241 F.3d at 809; *Lucero*, 160 F. Supp.2d at 779. "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Given that Jarvis cannot establish a likelihood of success on the merits, the Court must deny her request for equitable relief.[7]

### IV.

Jarvis argues that the Court should dismiss the Oakland County Defendants' Motion to Dismiss for failure to comply with Eastern District of Michigan Local Rule 7.1(a), which requires the filing party to seek concurrence or hold a conference before filing a motion. Counsel for the Oakland County Defendants indicates that he faxed a letter seeking concurrence on May 10, 2012. Jarvis denies receiving this letter. The Court is satisfied that the Oakland County Defendants' attempted to obtain concurrence in compliance with Rule 7.1(a). Jarvis has not shown that she was prejudiced by the Oakland County Defendants' failure to call to seek concurrence. Accordingly, Plaintiff's motion to dismiss is denied.

### V.

**IT IS ORDERED** that Defendants Bouchard, Cooper, McCabe, Walton, and Oakland

---

[7] Jarvis makes a similar request in her Complaint. For the same reasons, the Court finds that she has failed to state a claim for equitable relief.

County's Motion to Dismiss [Docket No. 5, filed May 15, 2012] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants O'Dell, Powell, and Robertson's Motion to Dismiss [Docket No. 14, filed June 8, 2012] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss [Docket No. 17, filed June 18, 2012] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Equitable Relief [Docket No. 23, filed July 23, 2012] is **DENIED**.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 28, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager